IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANGELA STILES o/b/o B.B.                                                    PLAINTIFF

VS.                                                           CIVIL ACTION NO. 3:16cv110--FKB

NANCY A BERRYHILL, Acting                                                   DEFENDANT
Commissioner of Social
Security

## ORDER

### I. Introduction

Angela Stiles filed for supplemental security benefits on behalf of her son, B.B., on August 14, 2012. After the application was denied both initially and upon reconsideration, she requested and was granted a hearing before an ALJ. The hearing was held on May 8, 2014, and on September 10, 2014, the ALJ issued a decision finding that B.B. is not disabled. The appeals council denied review. Plaintiff now brings her appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). She alleges that B.B. is disabled based upon asthma, intellectual disability, and a learning disability.

### II. Facts and Evidence before the ALJ

B.B. was born on August 17, 2001, and was 13 years of age at the time of the decision of the ALJ. He has a history of asthma. In June of 2012, his school district evaluated him for placement in special education. As a part of this assessment, B.B. was administered the Woodcock-Johnson III achievement test (WJ-III) and the Reynolds Intellectual Assessment Scales (RIAS). At the time of testing, B.B. was 10 years of age and had completed the fourth grade. The WJ-III indicated that he was

functioning at a grade level between 2.0 and 2.7 in all areas.  R. 136, [10] at 139.  On the RIAS, he achieved a verbal intelligence score of 78, a nonverbal intelligence score of 102, and a composite score of 88.  R. 138, [10] at 141.  It was determined that B.B. met the eligibility guidelines for a Specific Learning Disability (SDL) in basic reading skills.  R. 133, [10] at 136.

In September of 2012, Stephanie Thornton, B.B.'s special education teacher, completed a questionnaire.  Ms. Thornton stated that B.B. was in the fifth grade and received special education services five hours a week.  R. 164-65, [10] at 167-68.  She indicated that in the area of acquiring and using information, B.B. had serious to very serious problems, explaining that he needed much extra help and support to function in the inclusion classroom and that his tests were read to him.  R. 166, [10] at 169.  She stated that B.B. struggled in all subjects and that anything involving reading caused him stress.  *Id.*  Ms. Thornton indicated that in the area of attending and completing tasks, B.B needed extra encouragement to complete tasks and extra help to organize, and prepare.  R. 167, [10] at 170.  It was her observation that he did not work well in independent activities.  *Id.*  As to the domain of interacting and relating to others, she indicated that B.B. had some problems and that he needed a very structured environment.  R. 168, [10] at 171.  Ms. Thornton stated that B.B. had no problems in the domains of moving about/manipulating objects, caring for himself, and health and physical well-being.  R. 169-71, [10] at 172-74.

A second special education assessment was completed in May of 2013.  The report stated that B.B.'s learning disability in basic reading skills had a significant impact

on his progress in the general education classroom.  R. 186, [10] at 189.  It indicated that he struggled with anything involving reading, including language and particularly math, and that he needed the assistance of an inclusion teacher in the general education classroom.  *Id.*  Finally, the report noted that B.B. had been involved in a couple of fights at school and had been suspended because of them.  *Id.*

The school records indicate more discipline problems in the following school year, the most serious of which was an incident of fighting.  R. 208-212, [10] at 211-15.

In June of 2014, B.B. underwent a psychological evaluation by Dr. Criss Lott. B.B. was accompanied by his mother at the evaluation.  Ms. Stiles reported to Dr. Lott that B.B. maintained appropriate hygiene and grooming, and she described his daily living skills as age-appropriate.  R. 295, [10] at 298.  She stated that B.B. helped to clean his room, fed his dog, and took out the trash.  *Id.*  As to his social skills, she reported that B.B. enjoyed spending time with friends and relatives and would occasionally stay overnight with his friends.  *Id.*  He enjoyed playing outside and playing basketball and football.  *Id.*  She said that he had been suspended several times from school, but she indicated that there were no management problems at home or in the community.  R. 295, 297, [10] at 298, 300.  During the examination, B.B. was polite and cooperative.  R. 295, [10] at 298.   He was alert and attentive and responded appropriately to questions.  *Id.*  It was Dr. Lott's opinion that B.B. put forth a genuine effort during testing.  R. 296, [10] at 299.  On the Wechsler Intelligence Scale for Children (WISC-IV), B.B. achieved a full scale IQ of 65.  *Id.*  On the Wide Range Achievement Test (WRAT-4), he achieved scores of grade level 2.4 to 3.0 in all subject

matter areas. *Id.* Dr. Lott's provisional diagnoses were borderline intellectual functioning and an SDL in reading and math. *Id.* In connection with the examination, Dr. Lott completed a questionnaire in which he assessed B.B.'s functional capabilities. He described as "impaired" B.B.'s cognitive development, personal/behavioral patterns, and concentration, persistence and pace in task completion. R. 300-301, [10] at 303-304. With reference to this latter domain, Dr. Lott explained that B.B.'s working memory score was in the extremely low range. R. 301, [10] at 304.

      The administrative record contains the opinions of several agency consultants who examined the records. Dr. Eva Henderson opined that B.B.'s asthma is non-severe. R. 276-77, [10] at 279-80. Dr. James Herzog opined that B.B.'s learning disability constitutes a severe impairment but that it is not of listing severity. R. 270-71, [10] at 273-74. Dr. Herzog rated B.B.'s functional limitations as follows: No limitation in interacting and relating with others and caring for himself, a less than marked limitation in acquiring and using information, and a marked limitation in attending and completing tasks. R. 272-74, [10] at 275-76. Dr. Lisa Yazdani stated that B.B.'s learning disability and asthma constitute a severe impairment or combination of impairments but that they are not of listing severity. R. 282-83, [10] ta 285-86]. She assigned ratings to B.B.'s limitations in several of the domains as follows: No limitation in interacting and relating with others, in caring for himself, or in health and physical well-being; a less than marked limitation in acquiring and using information, and a marked limitation in attending and completing tasks. R. 204-205, [10] at 287-88.

4

At the hearing, B.B. testified that he likes to play sports in the neighborhood, watch television, and play video games. R. 57, 60, [10] at 60, 63. He can ride a bike. R. 59-60, [10] at 62-63. Concerning chores, he stated that he has a dog that he takes care of and that he also takes out the garbage. R. 57, 60, [10] at 60, 63. B.B. said that he does his homework. R. 58, [10] at 61.

Also testifying was Ms. Stiles. She reported that B.B. takes care of his dog but that she has to remind him to do so. R. 62, [10] at 65. He is able to play in a group with other children, but he becomes angry when things do not go his way. R. 68-69, [10] at 71-72. According to Ms. Stiles, B.B. can stay on task with his homework only about three minutes before he wants to get up and do something else. R. 67, [10] at 70.

### III.  The Decision of the ALJ

Disability claims by children are determined using a three-step sequential analysis. *See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether or not the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, the ALJ moves on to step two, which is a determination of whether the child suffers from a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 416.924(c). If the ALJ finds that the child suffers from a severe impairment, or a combination of impairments that is severe, the analysis continues to step three, which involves a determination as to whether the child's impairment meets, medically equals, or is the functional equivalent of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments). 20 C.F.R. § 416.924(d).

Functional equivalency is determined by assessment of all the functional limitations caused by the child's impairment or combination of impairments. 20 C.F.R. § 416.926a. This assessment requires the ALJ to analyze the child's ability in six "domains," which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six functional equivalency domains are (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.* A finding of functional equivalence is made only if the child has "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is one which seriously interferes with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2). It is "more than moderate but less than extreme." *Id.* An "extreme" limitation is a limitation which interferes very seriously with these abilities. 20 C.F.R. § 416.926a(e)(3). When deciding whether a child has a marked or extreme limitation, the ALJ must consider the child's functional limitations in all areas, including their interactive and cumulative effects. 20 C.F.R. § 416.926a(c).

In her decision, the ALJ found that B.B. has the severe impairment of borderline to mild mental retardation/learning disability and the non-severe impairment of asthma. R. 13, [10] at 16. At step three, she determined that these impairments do not meet or medically equal the requirements for a listed impairment. R. 14, [10] at 17. Thus, the ALJ was required to assess whether B.B.'s impairments are functionally equivalent to a listed impairment by analyzing B.B.'s ability to function in each of the six domains. The

6

ALJ found that B.B. has a marked limitation in domain one (acquiring and using information), R. 17, [10] at 20, a less than marked limitation in domains three (interacting with and relating to others) and five (health and physical well-being), R. 20, [10] at 23; R. 22, [10] at 25, and no limitations in domains two (attending to and completing tasks) and four (moving about and manipulating objects), R. 19, [10] at 22; R. 21, [10] at 24.  Based on her finding that B.B.'s limitations were not marked in two domains or extreme in one domain, the ALJ concluded that B.B. is not disabled within the meaning of the Social Security Act.  R. 22-23, [10] at 25-26.

## IV.  Analysis and Conclusion

In support of her appeal, Plaintiff makes two arguments: (1) That B.B. meets the listing for intellectual disability and that the ALJ's finding to the contrary is not supported by substantial evidence; and (2) that the ALJ's finding as to functional equivalence is not supported by substantial evidence.  The Court finds Plaintiff's argument as to functional equivalence to be dispositive and has therefore not addressed the remaining argument.

The focus of Plaintiff's position as to functional equivalence is the ALJ's finding that B.B. has no limitations in the domain of attending to and completing tasks.  The ALJ supported her finding on this issue by referencing B.B.'s testimony that he completes his homework and Dr. Lott's note that B.B. gave a genuine effort during testing, and by characterizing Ms. Thornton's opinion as having indicated that B.B. had no problem paying attention.  R. 19, [10] at 22

The Court finds that the ALJ's determination on this point is not supported by substantial evidence.  The ALJ was able to arrive at her conclusion only by cherry-

7

picking from and mischaracterizing the opinions of Ms. Thornton and Dr. Lott. Ms. Thornton's evaluation explicitly indicated that that B. B. has problems functioning in this domain. *See* R. 167, [10] at 170. In it, she identifies numerous, frequent problems in this domain and rates most of B.B.'s problems in this area as either "an obvious problem," "a serious problem," or "a very serious problem."[1] Dr. Lott similarly opined that B.B.'s abilities in the areas of concentration, persistence and pace, and completion of tasks were impaired. *See* R. 301, [10] at 304. Both Dr. Yazdani and Dr. Herzog opined that he has a marked limitation in this domain. *See* R. 272, 284, [10] at 275, 287. Moreover, the ALJ failed to address Dr. Lott's opinion on this issue or explain why she gave it no weight. This failure is particularly troubling given that elsewhere in the opinion the ALJ stated that she gave significant weight to the opinions of Dr. Lott. *See* R. 16, [10] at 19. In summary, the record does not contain substantial evidence to support the ALJ's determination that B.B. has no limitation in the domain of attending and completing tasks. Furthermore, the Court's conclusion requires remand, because

---

[1] The form completed by Ms. Thornton contains a list of thirteen separate components in the area of attending and completing tasks. The child's degree of limitation as to each of these components is to be rated as either "no problem," "a slight problem," "an obvious problem," "a serious problem," or "a very serious problem." Furthermore, the frequency of the problem (monthly, weekly, daily, or hourly) is to be indicated. Ms. Thornton rated B.B. as having "no problem" as to the components of paying attention when spoken to directly, sustaining attention during play/sports activities, and carrying out single-step instructions. R. 167, [10] at 170. She indicated that he has "a slight problem" with waiting to take turns. *Id.* As to three components – focusing long enough to finish assigned tasks, changing activities, and working without distracting himself or others – she indicated that he has "an obvious problem." *Id.* She indicated that he has "a serious problem" with regard to refocusing to task when necessary and organizing his own things and school materials. *Id.* She indicated that he has "a very serious problem" as to the four remaining components: carrying out multi-step instructions, completing school assignments, completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time. *Id.* In all of the areas in which she identified either serious or very serious problems, Ms. Thornton indicated that the problems occurred on a daily basis. *Id.*

had the ALJ properly considered all of the evidence, she may well have found that B.B. has a marked limitation in a second domain and is therefore disabled.

Accordingly, this matter is hereby remanded to the Commissioner for proceedings consistent with this opinion.  A separate judgment will be entered.

So ordered, this the 31st day of July, 2017.

<u>s/ F. Keith Ball</u>
United States Magistrate Judge
